IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW C. STECHAUNER,

                Plaintiff,

  v.

TONY EVERS, KEVIN CARR, LEIGHA WEBER,
CHERYL B. EPLETT, EMIL TONEY,
MAKDA FESSAHAYE, SARAH FELTES,
TEREASA MCGINNIS,
CORRECTIONAL OFFICER BAXTER,
PSYCHOLOGIST ROLON, LIEUTENANT STURZ,        OPINION and ORDER
ERIC NORMAN, CAPTAIN BOOKER, J. LUDWIG,
LORA ADAMS, PA KOTKOSKY,                           24-cv-111-jdp
PSYCHOLOGIST HENDRICKSON,
SANDRA L. DEYOUNG, G. LEWIGON,
JOHNATHAN CHRISTIANSON, DANIEL HUNEKE,
DANIEL CROMWELL, BRIAN CAHAK,
HEATHER SCHWENN, CAPTAIN CHATMAN,
CAPTAIN CRASPER, SERGEANT PUENT,
B. MULLER, R. CORDERO, NICOLE BROWN,
SGT. OLTRA, and OFFICER FROSTY,

                Defendants.

---

Plaintiff Matthew C. Stechauner, proceeding without counsel, is currently incarcerated at New Lisbon Correctional Institution. In a previous order, I concluded that Stechauner's complaint violated Federal Rules of Civil Procedure 18 and 20 by joining claims together that did not belong in the same lawsuit; I gave him a chance to pick which lawsuit he wanted to pursue under this case number. Dkt. 24. Stechauner has responded that he wishes to pursue his claims related to his allegation that an Oshkosh Correctional Institution officer disclosed Stechauner's high "risk of victimization" status to another inmate, who then sexually assaulted Stechauner. Dkt. 25. I will screen those allegations under the standards discussed in my

previous order. I conclude that Stechauner may proceed on Eighth Amendment claims about officials failing to protect him from harm.

ALLEGATIONS OF FACT

During the times relevant to his allegations, Stechauner was incarcerated at Oshkosh Correctional Institution. On October 7, 2022, defendant Correctional Officer Baxter told Stechauner, in front of other inmates, that Stechauner had been assessed with high risk-of-victimization status. Under the Prison Rape Elimination Act (PREA), this status is sensitive information that is forbidden from being shared with other inmates.

Later that day, one of the inmates present for that discussion, Ryan Hodge, slapped Stechauner's buttocks in front of defendants Sgt. Oltra and Officer Frosty. Although PREA required immediate reporting of a sexual assault and separation of the victim from the offender, Oltra and Frosty waited an hour to report it. Defendant Lieutenant Sturz came to take a statement from Stechauner; Sturz left Stechauner housed with Hodge.

Defendant Captain Norman and Captain Booker continued to keep Stechauner housed with Hodge. Several days after the incident, Hodge told Stechauner that he got away with slapping Stechauner once and that he would do it again, but then said that he was just joking.

Medical staff then violated PREA by not giving him a Sexual Assault Nurse Examiner (SANE) exam. Stechauner wasn't seen by Psychological Unit Services staff about the assault until more than a week later.

Stechauner wrote a series of complaints about the assault to Security Director Emil Toney, who shortly thereafter recommended that the Program Review Committee meet to review Stechauner's placement. Personnel involved in the review included defendants Norman

and Captain Christianson, who were aware of Stechauner's PREA investigation. Defendants Toney, and classification officials Henderickson and G. Lewison transferred Stechauner to New Lisbon Correctional Institution. Transfer of a sexual assault victim rather than the perpetrator violates PREA.

Staff also failed to preserve camera footage of the incident, which also violates PREA.

ANALYSIS

**A. Stechauner's claims**

Stechauner contends that prison staff violated his rights under the Constitution and under PREA by disclosing his victimization-risk status, which led to his assault; failing to separate him from the perpetrator; failing to provide him with medical or mental heath care; and then retaliatorily transferring him.

Stechauner contends that most of defendants' misconduct violated various PREA regulations. But PREA does not create a private cause of action. *McRae v. Myers*, No. 22-1821, 2023 WL 2423590, at *3 (7th Cir. Mar. 9, 2023). So I will address only Stechauner's constitutional claims.

The Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "'Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners.'" *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001)). To maintain an Eighth Amendment failure-to-protect claim, a prisoner must show that he was "incarcerated under conditions posing a

substantial risk of serious harm," and that the defendant consciously disregarded that risk. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Stechauner alleges that defendant Baxter did more than ignore a risk of harm; he knowingly introduced it by discussing Stechauner's victimization-risk status in front of other inmates, one of whom then slapped Stechauner's buttocks. Stechauner states an Eighth Amendment claim against Baxter.

Stechauner alleges that even following this incident, defendants Oltra, Frosty, Sturz, Norman, and Booker kept Stechauner housed in the same unit with Hodge, where Hodge harassed him; I take Stechauner to be saying that he suffered mental anguish because of it. I will allow Stechauner to proceed on Eighth Amendment claims against these defendants. Stechauner also conclusorily states that he wrote to more than a dozen other officials, such as Governor Tony Evers and DOC Secretary Kevin Carr. But I won't let him proceed against high-ranking officials for deprivations that are outside their authority or responsibility. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Stechauner contends that he wasn't given proper medical or psychological care immediately after the incident. A delay in medical treatment can violate the Eighth Amendment. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). But Stechauner doesn't allege that he was physically injured from the slap. And he concedes that he was seen by Psychological Services Unit staff about a week and a half later. Stechauner doesn't explain how he was harmed by this short delay in treatment, so he doesn't state an Eighth Amendment claim about his treatment. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("risk is not compensable [for constitutional claim] without evidence of injury").

4

Stechauner states that he was transferred to New Lisbon Correctional Institution about a month after the incident in retaliation for him complaining about the sexual assault. To establish a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). But the court of appeals has stated that "[w]ithout some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a transfer is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct." *Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020). Stechauner does not suggest that his transfer to New Lisbon exposed him to a more restrictive or dangerous environment. I will not allow him to proceed on a retaliation claim.

**B. Other lawsuits**

Stechauner states that he would also like to pursue the other two sets of claims in his complaint that are not part of this lawsuit. I will direct the clerk of court to open two new case numbers and place Stechauner's complaint in those cases. Stechauner states that he wishes to proceed without prepayment of the full filing fee, also known as "in forma pauperis" status. To do so, he will need to submit a six-month trust fund account statement so that the court can calculate an initial partial payment of the filing fees under 28 U.S.C. § 1915(b). In the order below I will set a deadline for him to submit a trust fund account statement.

ORDER

IT IS ORDERED that:

1. Plaintiff Matthew C. Stechauner is GRANTED leave to proceed on Eighth Amendment claims against defendants Baxter, Oltra, Frosty, Sturz, Norman, and Booker.

2. The clerk of court is directed to open two new lawsuits and to docket plaintiff's complaint in each.

3. Plaintiff may have until December 17, 2024, to submit a copy of his six-month trust fund account statement.

4. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

5. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing in this order to answer or otherwise plead to the plaintiff's complaint if it accepts service for the defendants.

6. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered November 26, 2024.

                      BY THE COURT:

                      /s/

                      _____

                      JAMES D. PETERSON
                      District Judge